UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHERRY COTTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:12-CV-1735 JAR |
| ) | |
| ST. LOUIS PUBLIC SCHOOLS, ) | |
| et al.,[1] ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

The matters now before the Court are: (1) Defendant St. Louis Public Schools' Motion to Dismiss Counts IV and V of Plaintiff Cherry Cotton's Second Amended Complaint[2] (ECF 41), and (2) Defendant's Motion for a More Definite Statement (ECF 43). Defendant filed a brief in support of its motion to dismiss (ECF 42) and a brief in support of its motion for more definite statement (ECF 44). In response, Plaintiff filed a single brief that addresses only Defendant's motion to dismiss. (ECF 46.) Defendant thereafter filed a reply brief in support of its motion to dismiss. (ECF 47.) Accordingly, the motion to dismiss is fully briefed, and the time for Plaintiff to oppose the motion for more definite statement has expired. For the reasons stated below, the motion to dismiss will be GRANTED in part and DENIED in part, and the motion for more definite statement will be DENIED.

---

[1] The Complaint and First Amended Complaint named only St. Louis Public Schools as a defendant. The Second Amended Complaint, however, also asserts 42 U.S.C. § 1983 claims against defendants Kelvin Adams, "McKinley High School Principal Williams," and "Assistant Principal Blankenship." (ECF 39.)

[2] No attorney has entered an appearance on behalf of Defendants Adams, Williams, and Blankenship, and the instant motion to dismiss is brought on behalf of only Defendant St. Louis Public Schools. Nevertheless, the Court finds that, for the reasons stated herein with regard to Defendant St. Louis Public Schools, the § 1983 as asserted against these other defendants will be dismissed in part as well.

## I. PROCEDURAL BACKGROUND

Plaintiff, proceeding pro se, initially filed a four-count Complaint against Defendant on September 25, 2012. (ECF 1.) Defendant thereafter filed its first motion to dismiss (ECF 12), which was granted in part, and Plaintiff was given an opportunity to file an amended complaint (ECF 17).[3] Plaintiff then retained counsel and filed an Amended Complaint on February 26, 2013. (ECF 22.) Defendant filed another motion to dismiss (ECF 33), which was, in part, conceded by Plaintiff (ECF 36). The second motion to dismiss was therefore granted in part, and Plaintiff was afforded yet another opportunity to file an amended complaint. (ECF 38.) Plaintiff filed a Second Amended Complaint on June 3, 2013. (ECF 39.) Defendant thereafter filed the instant motions to dismiss and for more definite statement.

## II. SECOND AMENDED COMPLAINT

In her Second Amended Complaint, Plaintiff, an African-American woman, alleges that she was employed as an instructor in the Defendant school system. (Id. at 2.) Specifically, she alleges that, starting in 2008, she worked at McKinley High School, where she taught classes, oversaw extracurricular activities, and served as the help desk representative. (Id. at 4.) Plaintiff alleges that "per the terms of [her] contract, it was subject to the notice of termination provisions of [Mo. Rev. Stat. §] 168.221." (Id. at 10.) Plaintiff further alleges that "Defendant failed to notify Plaintiff that her contract would not be renewed by April 15th [of 2011] as required by" Missouri statute, and that the contract "automatically renewed" for the 2011-12 school year. (Id.) She alleges that she therefore entered into a "probationary" employment contract (id.) on

---

[3] In this January 25, 2013 Order, the Court stated the following elements for a prima facie case of retaliation brought pursuant to Title VII: the plaintiff engaged in statutorily protected conduct; an adverse employment action was taken; and a causal connection exists between the two events. (ECF 17 at 4.) On June 24, 2013, the Supreme Court decided Univ. of Tex. Southwestern Med. Ctr. v. Nassar, -- U.S. --, 133 S. Ct. 2517 (2013). The Court in Nassar held that "a plaintiff making a retaliation claim under [42 U.S.C.] § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Id. at 2534 (emphasis added). Accordingly, during the pendency of this action, the standard for causation in Title VII retaliation cases was clarified by the Supreme Court to be "but-for."

July 5, 2011 (id. at 5) or July 14, 2011 (id. at 10) to teach for the 2011-12 school year. Plaintiff did not attach a copy of her contract to the Second Amended Complaint.

Plaintiff alleges that Assistant Principal Blankenship "fabricated grounds for discipline and disparaged Plaintiff's performance," which she alleges "was satisfactory and without incident," and that she was "systematically targeted for discipline." (Id. at 4.) Plaintiff alleges that she was "selected for discharge"[4] (id.) on August 15, 2011 (id. at 3) during a reduction in force ("RIF") even though "she had more seniority than some of her white, male counterparts"[5] (id. at 4-5), that she was not "recalled from a [RIF] in order of seniority" (id. at 4), and that "others with less seniority (including whites and males) were hired instead of recalling Plaintiff" (id. at 5). Plaintiff alleges "[o]ther employees, including the performance of [C]aucasian and male coworkers in the business educwas [sic] similar or worse than Plaintiff's, but they were not laid off or terminated," and that she was denied "an opportunity to apply for or [was] passed over for positions, contrary to Defendant's policies and practices and Missouri statutes . . . ." (Id. at 6-7.) Moreover, Plaintiff alleges that "she was not afforded a hearing and a right to present evidence to challenge her cancellation of her contract in contravention of Section 168.221 whose terms are mandatory and binding on the discretion of Defendant, and . . . she was chosen for RIF not based on seniority as required under 168.221.5 . . . ." (Id. at 11.)

Plaintiff alleges that Defendant took adverse actions against her because of "the animus of Defendant's management, and in particular Assistant Principal Blankenship towards Plaintiff

---

[4] Plaintiff characterizes the adverse action as a "discharge" (ECF 39 at 4), "termination" (id. at 5), "rifting" (id.), "la[y]-off" (id. at 6), "loss of employment" (id. at 7), "eliminat[ion] . . . from its workforce" (id. at 8), "fail[ure] to employ" (id. at 10), "cancellation of her contract" (id. at 11), and "[non]renew[al]" of her contract (id.). It appears that she does not allege that she was placed on an involuntary leave of absence.
[5] The Court supplements this allegation with a later allegation that "white, male teachers should have been rifted prior to Plaint [sic] because of her greater seniority" (ECF 39 at 5), to reasonably infer that Plaintiff has adequately alleged she was subjected to a RIF before other employees with less seniority than herself.

for having complained of harassment and disparate working conditions."[6] (Id. at 4.) Plaintiff further alleges that Blankenship used a racial slur when speaking about her (id.), and that she "was discriminated against because of her race and gender and sustained a loss of employment as a direct consequence of Defendant's management decisions and retaliation directed against her because of her sex, race, and prior complaints" (id. at 7). Plaintiff also alleges that she was "selected for termination/rifting because she spoke with St. Louis Police Department personnel who were investigating a complaint" made against Principal Williams. (Id. at 5.)

The Second Amended Complaint contains five counts. In Count I, Plaintiff asserts a Title VII claim for retaliation; in Count II, Plaintiff asserts Title VII claims for sex and race discrimination; in Count III, Plaintiff asserts a claim for discharge against Missouri public policy; in Count IV, Plaintiff asserts claims for breach of employment contract; and, in Count V, Plaintiff asserts 42 U.S.C. § 1983 claims for denial of her due process and equal protection rights guaranteed by the Fourteenth Amendment.

### III. MOTION TO DISMISS

**A.  Standard of Review**

Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," Aschcroft v. Iqbal, 556 U.S. 662, 678 (2009). In

---

[6] In the Second Amended Complaint, Plaintiff alleges that she complained to Christopher McNeil, one of her supervisors, "that Mr. Blakenship . . . and Mr. Williams . . . were harassing her and she complained that Williams and Blankenship took away duties and responsibilities from her as the cheerleading team monitor, the computer lab, and took away her position as the help desk point of contact, and advised McNeil that Williams and Blankenship were looking for a reason to get rid of Plaintiff for having cooperated with law enforcement." (ECF 39 at 3.) The Court assumes these to be the complaints of harassment and disparate working conditions to which Plaintiff refers.

ruling on a motion to dismiss, the Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted); see also Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Only well-pleaded facts are accepted as true, while threadbare recitals of the elements of a cause of action, naked assertions devoid of factual enhancement, and legal conclusions are not. Ashcroft, 556 U.S. at 678. "[L]egal conclusions can provide the framework of a complaint, [but] they must be supported by factual allegations." Id. at 679. To survive a motion to dismiss, a complaint must contain sufficient well-pleaded facts to state "a claim to relief that is plausible on its face." Id. at 678 (quotation omitted). A claim has facial plausibility when the well-pleaded facts allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. If the well-pleaded facts do not plausibly entitle the plaintiff to relief, the claim should be dismissed. Id.

**B. Discussion**

Defendant argues that Plaintiff fails to state breach of contract and § 1983 due process causes of action, and seeks dismissal of Count IV and part of Count V. Defendant highlights Plaintiff's allegation that she was laid-off from her position as a probationary teacher pursuant to a RIF. Defendant contends that RIFs are governed by Mo. Rev. Stat. § 168.291, which Defendant maintains expressly authorizes it to place probationary teachers on unpaid leaves of absence based on insufficient funds, decreases in pupil enrollment, or a lack of work. Defendant argues that, because the alleged lay-off was authorized by Mo. Rev. Stat. § 168.291, the lay-off cannot constitute a breach of contract. Further, Defendant highlights Plaintiff's allegation that her contract was cancelled at the time of the lay-off. Defendant contends that it is impossible to

have breached the contract when it thereafter failed to reinstate her because the contract is alleged not to have been in existence at that time.

Defendant also argues that Mo. Rev. Stat. § 168.291 and Mo. Rev. Stat. § 168.221.4 provide that RIFs are not limited by the notice or hearing procedures that otherwise govern the discharge of teachers. Defendant maintains that, as a probationary teacher, Plaintiff was not entitled to certain procedural due process rights because such rights are afforded only to teachers whose appointments have become permanent. Accordingly, Defendant contends that Plaintiff had no protected liberty interest in continued active employment, and further that she was not entitled to a hearing to present evidence. Defendant argues that Plaintiff's § 1983 claim based on due process should therefore be dismissed. The Court notes that, in its memorandum in support of its motion to dismiss, Defendant states that it does not seek dismissal of Plaintiff's § 1983 claim to the extent it is based on equal protection. (ECF 42 at 1 n.1.)

Plaintiff opposes Defendant's motion. Plaintiff argues that the discretion afforded to Defendant in selecting teachers to lay-off pursuant to a RIF does not allow them to choose individuals based on race or sex. Further, directing the Court to Mo. Rev. Stat. § 168.221.5, which Plaintiff states requires Defendant to rehire teachers on the basis of seniority, Plaintiff argues that she had both a legally protected liberty interest and a contractual right in being rehired. Plaintiff argues that, pursuant to Mo. Rev. Stat. § 168.221.5, "the seniority provisions are mandatory, and therefore the selection for RIF and determination of who is eligible for rehire is not discretionary as suggested by Defendant, but rather subject to constraints which Plaintiff contends were violated here." (ECF 46 at 4.)

1. **Count IV—Breach of Contract**

To state a breach of contract claim under Missouri law, a plaintiff must allege the existence of a contract, her own performance or tendered performance, and the defendant's nonperformance. See White v. White, 293 S.W.3d 1, 23 (Mo. Ct. App. 2009). In this case, Plaintiff argues that she entered into a probationary employment contract with Defendant to teach for the 2011-12 school year because she was not notified by April 15, 2011 that her then existing contract would not be renewed. The Court agrees that, for purposes of this motion, Plaintiff sufficiently alleges that her probationary employment contract automatically renewed for the 2011-12 school year. See Mo. Rev. Stat. § 168.221.1 (2010) ("The superintendent of schools on or before the fifteenth day of April in each year shall notify probationary teachers who will not be retained by the school district of the termination of their services. Any probationary teacher who is not so notified shall be deemed to have been appointed for the next school year.").

The authority to affect a probationary teacher's existing employment contract through a RIF is set forth in Mo. Rev. Stat. § 168.221.5, which, in 2011, stated in relevant part as follows:[7]

> 5. Whenever it is necessary to decrease the number of teachers because of insufficient funds or a substantial decrease of pupil population within the school district, the board of education upon recommendation of the superintendent of

---

[7] Effective August 28, 2013, Mo. Rev. Stat. § 168.291 was repealed, and subsection (5) of Mo. Rev. Stat. § 168.221 was amended to state as follows:

> 5. Whenever it is necessary to decrease the number of teachers because of insufficient funds or a substantial decrease of pupil population within the school district, the board of education upon recommendation of the superintendent of schools may cause the necessary number of teachers beginning with those serving probationary periods to be placed on leave of absence without pay, but only in the inverse order of their appointment. . . . Each teacher placed on leave of absence shall be reinstated in inverse order of his or her placement on leave of absence. . . . No appointment of new teachers shall be made while there are available teachers on unrequested leave of absence who are properly qualified to fill such vacancies. Such leave of absence shall not impair the tenure of a teacher. The leave of absence shall continue for a period of not more than three years unless extended by the board.

Mo. Rev. Stat. § 168.221.5 (2013). Notably, the condition that the "leave of absence shall continue for a period of not more than three years" has been added. Neither the repeal of Mo. Rev. Stat. § 168.291 nor the amendment of Mo. Rev. Stat. § 168.221.5, if applicable, would appear to affect this case.

> schools may cause the necessary number of teachers beginning with those serving probationary periods to be placed on leave of absence without pay, but only in the inverse order of their appointment. . . . Each teacher placed on leave of absence shall be reinstated in inverse order of his placement on leave of absence. . . . No new appointments shall be made while there are available teachers on leave of absence who are seventy years of age or less and who are adequately qualified to fill the vacancy unless the teachers fail to advise the superintendent of schools within thirty days from the date of notification by the superintendent of schools that positions are available to them that they will return to employment and will assume the duties of the position to which appointed not later than the beginning of the school year next following the date of the notice by the superintendent of schools.

Mo. Rev. Stat. § 168.221.5 (2010). The Missouri Court of Appeals, in St. Louis Teachers Union Local 420 v. St. Louis Bd. of Educ., 666 S.W.2d 25 (Mo. Ct. App. 1984), examined this section in a case that involved, in part, probationary teachers who were placed on leaves of absence after April 15 of the relevant year. That court interpreted subsection 5 as follows:

> Sub-paragraph 5 deals with lay-offs of teachers under contract. It authorizes leaves of absence for probationary teachers during the time they are under contract. . . . Its application to this case is restricted to those probationary teachers who did not receive notice of non-renewal prior to April 15, thereby causing their contracts to be renewed automatically for the following year. Those teachers were, pursuant to sub-paragraph 5, placed on leaves of absence for the 1982-3 year and that action is not challenged on this appeal. The courts of this state have consistently recognized the distinction between termination of an existing contract to teach and non-renewal of that contract.

Id. at 27-28. Furthermore, the court distinguished between subsection 5, which "deals with leaves of absence for teachers under contract," and subsection 1, which "deals with non-renewal of contracts." Id. at 28.

Despite Plaintiff's probationary employment contract, her employment for the 2011-12 school year was dependent on sufficient funds and the student population. That is, pursuant to certain conditions stated in Mo. Rev. Stat. § 168.221.5, she was potentially subject to a RIF. Nowhere in the Second Amended Complaint does Plaintiff allege that there were not insufficient

funds or a substantial decrease in the student population such that a RIF was improper. The question, then, is whether the RIF was correctly accomplished under the prescribed procedures.

Plaintiff alleges that, pursuant to the terms of her contract and Missouri law, she was incorrectly the subject of a RIF in August of 2011 and later incorrectly not reinstated. In the Court's view, there are two distinct bases upon which Plaintiff's breach of contract claims are grounded: (1) Plaintiff was initially subject to a RIF before others with less seniority, and (2) Plaintiff was not reinstated after a RIF even though she had more seniority than others who were given positions.

### i. Plaintiff was initially subject to a RIF before others with less seniority

Although Plaintiff alleges on page four of her Second Amended Complaint that she was "discharged" as part of the RIF, it is reasonably inferred from the allegations on page five that such action occurred before the RIF affected individuals with less seniority. Accordingly, regardless of the race or gender of those individuals with less seniority allegedly not subject to the RIF before Plaintiff, Plaintiff adequately alleges Defendant's action contravenes the language of Mo. Rev. Stat. § 168.221 that requires such action to be taken in inverse order of appointment. Defendant's argument that a RIF was authorized by Plaintiff's contract and Missouri statute, therefore, misses the mark. It is not Defendant's general implementation of a RIF about which Plaintiff complains; rather, it is the allegedly non-statutory manner in which Defendant implemented the RIF. Defendant's motion to dismiss in this regard will therefore be denied.

### ii. Plaintiff was not reinstated after a RIF even though she had more seniority than others who were given positions

Plaintiff alleges that she was "discharged" on August 15, 2011, and that her employment contract was "cancell[ed]." Accordingly, Defendant's argument that it is impossible for it to

have breached the contract when it thereafter failed to reinstate her because the contract is alleged not to be in existence at that time is well taken.

Nevertheless, Plaintiff consistently alleges that her active employment ended during a RIF. <u>St. Louis Teachers Union Local 420</u> seems to suggest that, pursuant to Mo. Rev. Stat. § 168.221.5, employees under a probationary contract subject to a RIF are automatically placed onto a <u>leave of absence</u> for the contracted school year. This construction of Missouri law is reasonable. Indeed, it would seem the statutorily proscribed reinstatement process could be circumvented if Defendant were allowed simply to discharge an employee instead of placing that employee on a leave of absence. For purposes of this motion, the Court finds that Plaintiff was on a leave of absence during the 2011-12 school year, and further that she adequately alleges that Defendant failed to reinstate employees in inverse order of placement on leave of absence to her detriment.[8] Accordingly, Defendant's motion to dismiss in this regard will be denied.

### 2. Count V—§ 1983 Due Process

To assert a procedural due process claim, a plaintiff must adequately allege that she has been deprived of a constitutionally protected interest. "Where no such interest exists, there can be no due process violation." <u>Warren v. Bd. of Educ.</u>, 200 F. Supp. 2d 1053, 1064 (E.D. Mo. 2001) (citation omitted). Furthermore, even if such a protected interest exists, the plaintiff must adequately allege that the procedures used to deprive her of the interest were not constitutionally sufficient. <u>Id.</u> "Any claim of a property interest in employment must be grounded in state law." <u>Gibson v. Caruthersville Sch. Dist. No. 8</u>, 336 F.3d 768, 772 (8th Cir. 2003) (citation omitted). Under Missouri law, even if a state employee has a property interest that requires a hearing

---

[8] The Court is troubled by Plaintiff's failure to allege <u>when</u> Defendant reinstated or hired other teachers instead of her. Nevertheless, because Plaintiff's EEOC Dismissal and Notice of Rights letter (ECF 1-1) is dated June 26, 2012 (presumably at the tail end or just after the end of the 2011-12 school year), for purposes of this motion the Court assumes that Plaintiff alleges events that occurred during a relevant time period.

before termination for cause, such an interest does not extend to a lay-off for discretionary reasons, such as a lack of work or inadequate funding. See Walker v. Pers. Advisory Bd. of State, 670 S.W.2d 1, 3 (Mo. Ct. App. 1984) ("In the present case, respondents may be deprived of their state employment not only for cause . . . but also upon a layoff which is discretionary with the appointing authority . . . whenever he deems it necessary by reason of shortage of work or funds. Thus, respondents do not possess an entitlement which cannot be removed except for cause. Although respondents may have a property interest which requires a pre-termination hearing before a dismissal, that property interest does not extend to a layoff." (internal citations omitted)).

To support her § 1983 due process claim, Plaintiff argues that she "sought to obtain a hearing . . . on the fact that she was not notified of an opportunity for rehire prior to employment of new teachers that had less seniority than Plaintiff, but she was never given a hearing." (ECF 46 at 4.) However, as Defendant points out, Plaintiff's procedural due process claim as currently alleged is based on the denial of a hearing to challenge RIF decisions, not the denial of a hearing to challenge reinstatement decisions. Nothing in Mo. Rev. Stat. § 168.221.5 requires a hearing for an employee who is to be placed on a leave of absence during a RIF. Rather, because of insufficient funds or a substantial decrease in pupil population, the statute grants the board of education, upon recommendation of the superintendent of schools, power simply to place the necessary number of employees on leave of absence. See Mo. Rev. Stat. § 168.221.5. Plaintiff has not directed the Court to any authority that supports her contention that she had an interest protected against being laid-off or a right to a hearing to challenge the decisions made during the RIF.[9] Therefore, she has not sufficiently alleged the deprivation of a protected property interest

---

[9] Plaintiff similarly fails to illustrate that she had a right to a hearing to challenge reinstatement decisions made after the RIF, and such a claim, even if asserted in the Second Amended Complaint, would be dismissed.

or inadequate process.  Accordingly, the Court will grant Defendant's motion to dismiss in this regard.

## IV. MOTION FOR MORE DEFINITE STATEMENT

### A. Standard of Review

A motion for more definite statement is proper when a party is unable to determine the issues that must be met, or where there is a major ambiguity or omission in the complaint that renders it unanswerable.  Love v. Career Educ. Corp., No. 4:11CV1585, 2012 WL 10614, at *1 (E.D. Mo. Jan. 3, 2012) (citing Tinder v. Lewis County Nursing Home Dist., 207 F. Supp. 2d 951, 959 (E.D. Mo. 2001)).  Further, motions for more definite statement are designed to strike unintelligibility rather than lack of detail in the complaint.  Broadcast Music, Inc. v. MWS, LLC, No. 4:11CV1481, 2012 WL 368736, at *2 (E.D. Mo. Feb. 3, 2012).  However, because of the availability of extensive discovery and liberal notice pleading, motions for more definite statement are generally disfavored.  Id. (citing Tinder, 207 F. Supp. 2d at 959).

### B. Discussion

Defendant contends that Plaintiff's allegations in Counts I and III are so vague and ambiguous that it cannot properly respond to them.  Defendant argues that it would have to speculate about the claims Plaintiff intends to assert, and therefore asks that the Court require Plaintiff to clarify such claims.  As noted above, Plaintiff has filed no opposition to Defendant's motion.

In Count I, Plaintiff asserts a Title VII claim for retaliation.  She alleges that she complained to McNeil about coworker harassment and because certain duties and responsibilities had been taken away from her.  She further alleges that she "was subjected to discrimination in the terms and conditions of her employment because of her prior complaints of unlawful

employment practices, as well as for opposing Blankenship's harassment of Plaintiff." (ECF 39 at 6.) These allegations are not so unintelligible to warrant the need for a more definite statement.

In Count III, Plaintiff asserts a claim of discharge against Missouri public policy. She alleges that she "routinely complained of re-employment practices . . . and of improper and unlawful practices," that "she spoke with police officers" who were investigating allegations made "against Principal [Williams]," and that she was subsequently "identified for termination." (Id. at 9.) She alleges that "complaints and participation in a police investigation . . . were protected as in keeping with the clear public policy of the State of Missouri . . . ." (Id.) As with Count I, these allegations are not so unintelligible to warrant the need for a more definite statement.

Given Plaintiff's allegations, the liberal pleading standard, and the general disfavor for motions for more definite statement, the Court will deny Defendant's motion for more definite statement.

## V. CONCLUSION

For the above stated reasons,

**IT IS HEREBY ORDERED** that Defendant St. Louis Public Schools' Motion to Dismiss (ECF 41) is GRANTED in part such that Count V is DISMISSED to the extent it asserts a due process claim, and is DENIED in all other respects.

**IT IS FURTHER ORDERED** that Defendant St. Louis Public School's Motion for a More Definite Statement (ECF 43) is DENIED.

Dated this 23rd day of September, 2013.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE